UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO.   8:01-cr-269-T-23AAS
                                                                 8:13-cv-1701-T-23AAS
RUSSELL JOHN NESTOR

_____/

# O R D E R

Nestor moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the

validity of both his controlled-substance convictions and his sentence of 420 months.

A jury convicted Nestor (1) of conspiring to distribute, and to possess with the intent

to distribute, mixtures containing gamma-butyrolactone (GBL), a controlled

substance analogue of gamma-hydroxybutyric acid (GHB), (2) of distributing GBL

that resulted in death, and (3) of possessing GBL with the intent to distribute.[1]  The

Eleventh Circuit affirmed the convictions and the sentence. (Doc. 172 in 01-cr-269)

Nestor admits his motion's untimeliness but asserts entitlement to equitable

tolling based on attorney abandonment.  The United States moves to dismiss the

motion as untimely and contests Nestor's entitlement to equitable tolling.  (Doc. 6)

Nestor moves for a hearing.  (Doc. 11)  A careful review of the present record shows

_____

[1]  GBL is commonly known as a "date rape drug."  Count One of the First Superceding
Indictment charged Nestor with possessing "9.8 gallons of a product containing GBL" in
furtherance of the conspiracy.  (Doc. 37 at 5 in 01-cr-269)

that Nestor proves entitlement to equitable tolling based on attorney abandonment. The record is otherwise insufficient to determine whether Nestor overcomes the time bar.

The Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2255(f)(1), states, "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the judgment of conviction becomes final . . . ." The May 3, 2004, denial of *certiorari* began Nestor's one-year, which concluded on May 3, 2005. Nestor moved to vacate on July 1, 2013, eight years beyond the limitation established under Section 2255(f)(1). Nestor asserts entitlement to a review on the merits based only on the judicially created "equitable tolling" exception to the limitation and not under any other provision in Section 2255(f).[2]

## EQUITABLE TOLLING

*Holland v. Florida*, 560 U.S. 631, 645 (2010), holds that equitable tolling is sometimes available. Nestor bears the burden of proving entitlement to equitable tolling. *Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). To qualify for equitable tolling Nestor must prove both "extraordinary circumstances" that were beyond his control and "due diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable tolling is

---

[2]  Neither party has addressed Nestor's possible entitlement to a limitation under Section 2255(f)(4), which affords a one-year limitation from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.")  See cases collected in *Harper v. Ercole*, 648 F.3d 132, 137 (2nd Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline.").  Nestor shows both extraordinary circumstances and due diligence.

**<u>Extraordinary Circumstances:</u>**

Nestor contends that his retained attorney abandoned him.  As *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012), explains, "abandonment" qualifies as an "extraordinary circumstance":

> We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control," necessary to lift the state procedural bar to his federal petition.

David Jonathan Joffe was appointed to represent Nestor on direct appeal. While the appeal was pending, Nestor's father hired investigators and began discussing with Joffe the possibility of retaining Joffe's services for post-conviction relief. (Attachment B, Doc. 9-1)  The appeal concluded with the denial of *certiorari* on May 3, 2004 (Doc. 180), which is when Nestor's one-year limitation began.

A little more than six months after the limitation began, Nestor's father sent to Joffe both results from the investigation and half of the agreed $20,000 retainer. (Attachment A, Doc. 9-1)  An additional $5,000 was paid in February, 2005, and the final installment was paid a few weeks later in March.  (Affidavit, ¶11, Doc. 90-1) The limitation was May 3, 2005, less than two months away.  For the next four years Nestor's father attempted — but with limited success — to communicate with Joffe.  When contacted by Nestor's father, Joffe claimed that he was working on the case.  (Attachments C–F, Doc. 90-1)  In October, 2010, Nester's father discharged Joffe (Attachment G, Doc. 90-1), and two months later he filed with The Florida Bar a formal complaint against Joffe.  (Affidavit, ¶22, Doc. 90-1)  On July 31, 2012, the Supreme Court publicly reprimanded Joffe and ordered the return to Nestor of the $20,000 fee.  This concluded both Joffe's involvement and the asserted basis for equitable tolling.[3]

Nestor argues that Joffe's misrepresentation and inaction establish abandonment.  Whether an attorney's inaction constitutes abandonment is necessarily dependent upon the facts under review.  *Downs v. McNeil*, 520 F.3d 1311 (11th Cir. 2008), explains:

> During the course of representation, counsel's alleged behavior ran the gamut from acts of mere negligence to acts of gross negligence to acts of outright willful deceit. In considering whether the conduct of counsel was extraordinary, we will not dissect the continuing course of conduct in which counsel

---

[3] While Nestor's complaint against Joffe was pending, Nestor "met with and agreed to retain the services of" Nestor's present counsel, but Nestor was unable to "fully pay" the attorney's fee until the recovery of the retainer paid to Joffe.

engaged, but rather view counsel's behavior as a whole.
Consequently, although the culminating event which rendered
Downs' federal habeas petition untimely was counsel's late
filing of the petition, that ordinary act of negligence cannot be
isolated from counsel's allegedly egregious misconduct.

*Holland*, 560 U.S. at 651, cites cases in which the "lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary'. . . ."  Nestor emphasizes three of the cases *Holland* cites, specifically, *Baldayaque v. United States*, 338 F.3d 145 (2nd Cir. 2003), *Spitsym v. Moore*, 345 F.3d 796 (9th Cir. 2003), and *United States v. Martin*, 408 F.3d 1089 (8th Cir. 2005).  Each case, including *Holland*, features egregious attorney misconduct both prejudicial to the client and similar to Joffe's misrepresentation and inaction.  In sum, Nestor proves abandonment that meets the "extraordinary circumstance" requirement for entitlement to equitable tolling. However, as discussed above, equitable tolling requires proof of both "extraordinary circumstances" and "due diligence."

**Due Diligence:**

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'"  *Holland*, 560 U.S. at 653 (citations omitted). Through the assistance of his father, Nestor persisted in urging Joffe to challenge Nestor's conviction and sentence.  The details of this persistence are disclosed more fully in the father's affidavit.  (Attachment 1, Doc. 9-1)  As stated in *Downs*, 520 F.3d at 1323 (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)) (ellipsis original), "Due diligence . . . does not require a prisoner to undertake repeated

- 5 -

exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts.   Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system."  The affidavit shows that "due diligence" was exercised for equitable tolling.

As a consequence, Nestor proves entitlement to equitable tolling based on his former counsel's abandonment.  However, the present state of the record is insufficient to determine whether Nestor is relieved from the one-year bar.

**Actual Innocence Exception to the Limitation:**

Proof of actual innocence acts as a "gateway" through which a defendant may pass to assert an otherwise time-barred or procedurally barred federal claim.  Passage through the gateway is difficult to obtain because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The gateway is narrow and opens "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *McQuiggin, Warden, v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (quoting *Schlup v. Delo* 513 U.S. 298, 316 (1995)).

- 6 -

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted), explains that the applicant's burden, although demanding, is not absolute proof of innocence:

> [I]t bears repeating that the *Schlup* standard is demanding and permits review only in the "extraordinary" case . . . . At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

Nestor provides an affidavit from an individual who was present inside the apartment when the drug was allegedly delivered to the victim. The affiant attests that "at no time did Russell Nestor give [the victim] anything to eat or drink." (Doc. 9-2 at 3) Nestor's entitlement to a review on the merits warrants further development because the motion to vacate alleges substantial claims of ineffective assistance of counsel, particularly counsel's failure to investigate and present the testimony of the affiant.

The pending motion to dismiss is limited to the timeliness of the motion to vacate. Nestor's evidence of actual innocence is so intertwined with the grounds in the motion to vacate that the parties must address the merits. The United States challenges the credibility of the affiant. Determining credibility under the pending motion to dismiss is premature. *See House v. Bell*, 547 U.S. at 537 (acknowledging that at an evidentiary hearing a district court may "consider how the timing of the

submission and the likely credibility of the affiants bear on the probable reliability of that evidence") (quoting *Schlup*, 513 U.S. at 331–32).  In determining Nestor's grounds, the district "court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–28).

Although Nestor's father retained both trial and post-conviction counsel, Nestor was appointed appellate counsel under the Criminal Justice Act.  (Doc. 148 in 01-cr-269)  As a consequence, Nester is entitled to appointed counsel for the remainder of this action.

Accordingly, the United States' motion to dismiss (Doc. 6) is **DEFERRED**. Nestor's motion for a hearing (Doc. 11) is **DENIED**.  Nestor's present counsel is appointed under the Criminal Justice Act.  This action is **STAYED AND ADMINISTRATIVELY CLOSED**.  On or before **MONDAY, MAY 8, 2017**, the United States must respond on the merits of the motion to vacate.  On or before **MONDAY, JUNE 12, 2017** (or thirty days after the United States responds to this order, whichever occurs later), Nestor may reply on the merits of his motion to vacate.  The clerk will re-open this action after the parties have briefed the merits.

ORDERED in Tampa, Florida, on March 31, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE